

**Dated: November 22, 2017**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DAVID A. STEWART and | ) | Case No. 15-12215-JDL |
| TERRY P. STEWART, | ) | Ch. 7 |
| | ) | **Jointly Administered** |
| Debtors. | ) | |
| | ) | |
| SE PROPERTY HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ADV No. 16-1087-JDL |
| | ) | |
| DAVID A. STEWART and TERRY P. | ) | |
| STEWART, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

The Court has before it in this adversary proceeding the Defendants' *Motion to
Dismiss Claims Pursuant to 11 U.S.C. §§ 727(a)(3) and 727(a)(4)(C) from Amended
Complaint* (the "Motion") [Doc. 21] and *SE Properties' Opposition to Debtors' Motion to
Dismiss Claims Pursuant to 11 U.S.C. §§ 727(a)(3) and 727(a)(4)(C) from Amended*

*Complaint* (the "Objection") [Doc. 23].

This adversary was commenced on August 26, 2016, by the filing of SE Property Holdings, LLC's ("SEPH") Complaint which sought to bar the discharge of David and Terry Stewart ("Stewarts") under several subsections of 11 U.S.C. § 727(a)[1] or, alternatively, § 523(a)(2)(A).[2] [Doc. 1]. The Stewarts filed their Answer to the Complaint on October 31, 2016. [Doc. 7]. On June 30, 2017, SEPH filed its *First Amended Complaint Objecting to Discharge* which added to the Complaint objections to discharge under three additional § 727(a) grounds: (1) § 727(a)(3) (concealment, destruction, mutilation, falsification or failure to keep or preserve records, books documents etc. from which to determine the debtor's financial condition or business transactions); (2) § 727(a)(4)(C) (knowingly and fraudulently gave, offered, received, or attempted to obtain money, property or advantage, for acting or forbearing to act); and (3) § 727(a)(6) (refusing to obey any lawful order of the court). The Stewarts seek to dismiss the § 727(a)(3) and § 727(a)(4)(C) claims for relief[3] pursuant to Fed.R.Civ.P. 12(b)(6), made applicable to these proceedings by Fed.R.Bankr. P. 7012(b), for failure to state a claim upon which relief can be granted.

## I. Jurisdiction

The Court's jurisdiction over this adversary proceeding is properly invoked under 28 U.S.C. § 1334(b) and § 157(a) and (b). SEPH's Complaint seeks to deny the Defendants'

---

[1] Those sections are: Sections 727(a)(2) (transfer, removal, destruction or concealment of property with the intent to defraud a creditor or an officer of the bankruptcy estate); 727(a)(4)(A) (made a false oath); and 727(a)(5) (failure to explain satisfactorily any loss of assets or deficiency of assets).

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

[3] Stewarts' Motion does not seek a dismissal of the § 727(a)(6) claim.

discharge, making this a core proceeding under 28 U.S.C. § 157(b)(2)(J). Venue is proper in this District under 28 U.S.C. § 1409.

## II. Discussion

### A. Dismissal Under Rule 12(b)(6) Standards

A plaintiff's complaint will avoid dismissal if it contains enough facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). Facial plausibility exists where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, a complaint must do more than raise a "sheer possibility that a defendant has acted unlawfully." *Id*. Where the facts in the complaint allow a court to infer no more than "the mere possibility of misconduct," the complaint has not met its burden to show that it is "entitled to relief." *Id* at 679. In other words, plaintiffs must nudge their claims "across the line from conceivable to plausible" to survive a motion to dismiss. See *Twombly*, 550 U.S. at 570.

The Tenth Circuit has stated that the standard announced by *Twombly* and *Iqbal* represents "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the [Supreme] Court stated will not do." *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)).

When considering a motion to dismiss brought pursuant to Rule 12(b)(6), the Court

must treat all well-pleaded allegations in the complaint as true, and must view them in the light most favorable to the plaintiff. *Beck v. City of Muskogee Police Department*, 195 F.3d 553, 556 (10th Cir. 1999). However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State School for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

## B. Sufficiency of SEPH's Claims for Relief

### 1. Section 727(a)(3)

SEPH's first amended claim for relief seeks denial of the discharge predicated upon § 727(a)(3). That provision denies a debtor's discharge where "a debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information...from which the debtor's financial condition or business transactions might be ascertained," without justification. In order to state a *prima facie* case under § 727(a)(3), a plaintiff must show that the debtor "failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain the debtor's financial condition and *material* business transactions." *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1295 (10th Cir. 1997).

SEPH's § 727(a)(3) claim centers around a series of documents by which Debtors transferred virtually all their interests in limited liability companies and oil and gas properties to their children, other entities or a trust established in the name of Debtor David Stewart's mother. SEPH asserts that those documents/transactions were sham transactions done for the purpose of putting Debtors' property beyond the reach of their

4

creditors.  In their Motion, the Stewarts argue that there are no *factual* allegations, only

conclusory statements, supporting the conclusion that they falsified documents by creating

them in 2013 and backdating them to show their execution in 2011 or allegations "that the

complained of act was not justified under all the circumstances of the case."  [Doc 21, pg.

3].  The Stewarts seize upon the conclusory language in paragraphs 31 and 32 of the First

Amended Complaint in which SEPH sums up its allegations.  The Stewarts, however,

overlook the plethora of factual details alleged in paragraphs 21-24 of the First Amended

Complaint which support SEPH's claims for the falsification of documents, including:

> "Debtors continued to represent to taxing authorities that they owned
> 100% of the membership interests of Oklamiss through 2013 on their
> individual federal and state tax returns for 2012 and 2013." [Doc. 14 ¶ 21];

> "No tax returns for this period attributed any ownership interest in
> Oklamiss to the Stewart Children" [Id.];

> "Jena Rush Stewart, a recipient of interests transferred in the
> Oklamiss Transfer, was not aware of the purported Oklamiss Transfer until
> the end of 2013" [Id ¶ 22];

> "[N]either Linda Maguire, Raven Resources' in-house counsel, nor
> Dan Neale, Raven Resources' bookkeeper, knew about the Oklamiss
> Transfer until late 2013 or early 2014" [Id .];

> "Dennis Lakely, the accountant who prepared tax returns for
> Oklamiss, Debtors, and various other entities owned by Debtors, first learned
> of the Oklamiss Transfer from Dan Neale and first documented the Oklamiss
> Transfer in 2013.  But even then, the Oklahoma tax return for 2013, prepared
> in 2014, continued to reflect Debtor's 100% ownership of Oklamiss" [Id.]; and

> "Aside from personal financial statements that were prepared for
> submission to Kirkpatrick Bank only, Debtors did not disclose the Oklamiss
> Transfer to creditors until after the Petition Date in 2014" [Id. ¶ 23].

These allegations, which must be accepted as true on this motion to dismiss,

provide a factual basis for assertion that the documents may not have been created at the

time they so state.  At this stage of litigation, whether the documents were falsified to make it appear that the transfers took place around 2011 remains to be determined, but the allegations in the Complaint go way beyond what is required in terms of factual specificity under Rule 12(b)(6) to state a claim for relief under § 727(a)(3).

## 2. Section 727 (a)(4)(C)

SEPH's second amended claim for relief seeks denial of a discharge predicated upon § 727(a)(4)(C).  Section 727(a)(4)(C) operates to deny the debtor's discharge where the debtor "knowingly and fraudulently, in or in connection with the case, gave, offered, received, or attempted to obtain money, property, or advantage (or a promise thereof) for acting or forbearing to act." [4]

At the outset, an element of any claim under § 727(a)(4) is fraudulent intent.  Thus, the complaint must meet the particularity requirements of Rule 9(b).[5]  To plead fraud adequately, a plaintiff must "set forth the who, what, when, where and how of the alleged fraud." *United States ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *Thompson v. Columbia/HCA Health care Corp*., 125 F.3d 899, 903 (5th Cir. 1997)).  In other words, a complaint alleging fraud must identify the "time,

---

[4]  This section is analogous to the criminal provisions applicable to bankruptcy cases. Title 18 U.S.C. § 152(6) states that a person who "knowingly and fraudulently gives, offers, receives or attempts to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof for acting or forbearing to act in any case under title 11" shall be fined under this title, imprisoned not more than 5 years, or both.  The definition of "bribe" and "bribery" closely follows the proscribed conduct contained in § 727(a)(4)(C).  *Black's Law Dictionary,* pg. 191 (6th Ed. 1990).

[5]  Made applicable in adversary proceedings by Fed.R.Bankr.P. 7009, Fed.R.Civ.P. 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence National Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

To sustain an objection under § 727(a)(4)(C), the objecting party must establish both: (1) knowledge and fraudulent intent on the part of the debtor; and, (2) receipt of, or an attempt to obtain, or the giving or offering of, money, property, or advantage, or a promise of these, for a purpose, namely, action or forbearance in the case in which the offender is a debtor. *In re Adalian,* 474 B.R. 150, 165 (Bankr. M.D. Pa. 2012); *In re Stokes*, 451 B.R. 44, 87 (Bankr. D. Mont. 2011). Most of the cases addressing § 727 (a)(4)(C) cite *Collier on Bankruptcy* which concludes that the section is meant to address any attempted or actual extortion or bribery in connection with a bankruptcy case:[6]

> Section 727(a)(4)(C) covers any "extortion," even using that word in a broad, general sense, and bribery. It also covers an attempt to extort, and an attempt to bribe, which makes it unnecessary to establish that the consideration for acting or forbearing was paid, or for that matter, that the promised act was carried out. In addition, the giving or offering of bribes is forbidden.
>
> ****
>
> Section 727(a)(4)(C) clearly contemplates the denial of a discharge to debtors who accept a "bribe," i.e., money or property, advantage or a promise of these for acting or forbearing to act in or in connection with the case. It also includes the giving or offering of a bribe by the debtor.

6 Allen N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 727.06, at 727– 42 (16th

---

[6] See e.g. *In re Korfonta*, 417 B.R. 707 (Bankr. E.D. Va. 2009); *In re Lindemann*, 375 B.R. 450 (Bankr. N.D. Ill. 2007); *In re Ledvinka*, 144 B.R.188 (Bankr. M.D. Ga. 1992); *In re Adalian*, 474 B.R. 150,165 (Bankr. M.D. Pa. 2012); *In re Kamara*, 2012 WL 5879718 (Bankr. D. Del. 2012).

Ed. Rev. 2015).

SEPH's First Amended Complaint does sufficiently identify the "who, what, when, why and how."  SEPH alleges in its First Amended Complaint, and there has been evidence introduced in various hearings and pleadings in the case supporting the same, that during the bankruptcy proceedings Kirkpatrick Bank ("Kirkpatrick") without notice to SEPH, the creditors or the Court "shored-up" its collateral position for the Raven and Oklamiss debt (guaranteed by Debtors) by taking security interests in previously unencumbered oil and gas properties, taking assignments of judgment liens from Legacy Reserves and taking a consent judgment against Raven and securing the same by judgment liens.  In Paragraphs 41-45 of the First Amended Complaint SEPH alleges specific facts which it claims supports its conclusion that the Debtors' objective in cooperating with Kirkpatrick in improving its collateral position was "to defraud the bankruptcy estates by attempting to remove these valuable assets from the reach of unsecured creditors like SE Properties."  [First Amended Complaint, Doc. ¶ 43].  Taking these allegations as true for purposes of Rule 12(b)(6), does the same state a claim for relief under § 727(a)(4)(C)?

There is no doubt that during the bankruptcy Kirkpatrick improved its secured position on the obligations which it had with Raven, Oklamiss and NOG, LLC and guaranteed by Debtors by taking security interests in previously unencumbered property or buying out the secured position of others which had a prior position (InterBank and Legacy).  The benefit to Kirkpatrick is obvious.  The benefit to the Debtors was that their cooperation and accommodation to Kirkpatrick induced Kirkpatrick not to accelerate the outstanding indebtedness which Kirkpatrick held and induced it to continue to advance

8

funds to Raven for its operations.

Kirkpatrick may have been playing "hardball", but it appears to this Court that Kirkpatrick was doing what most banks would do in the same position, i.e. grab onto as much collateral as possible and continue to fund operations to avoid a complete liquidation. Importantly, it must be remembered that Raven and Oklamiss are not in bankruptcy. SEPH appears to conflate the pending substantive consolidation claims against the "Stewart Entities" with them already being debtors in bankruptcy subject to the constraints of debtors. Were that the case, Kirkpatrick acquiring further collateral without court approval would clearly have been wrongful without specific court approval. With one possible exception, acquisition of additional collateral was not in violation of an order of the Court.[7]

Kirkpatrick's actions, with the Debtors' cooperation, in attempting to improve its collateral position was "in consonance with the purpose of Section 727(a)(4)(C), to address the potential for the efforts of a debtor *to subvert the bankruptcy process itself, as differentiated from the seeking of an advantage with respect to a particular claim*." (Emphasis added). *In re Wendt*, 381 B.R. 217, 225 (Bankr. S.D. Texas 2007); See *In re Lindemann*, 375 B.R. 450 (Bankr. N.D. Ill. 2007). The Court finds that the allegations of

---

[7] On January 5, 2017, the Court entered an *Agreed Order Granting Preliminary Injunction* [Doc. 32 in Adv. Case No. 16-1002] prohibiting Raven from "selling, assigning, hypothecating, and/or otherwise conveying any assets and/or interests owned by [Raven] to . . . a third party" without approval of the Trustee. Subsequent to the entry of the Preliminary Injunction, Raven, acting through Debtor David Stewart, approved a judgment in favor of Kirkpatrick against Raven which allowed the perfection of judgment liens on all real property interests of Raven. This conduct by the Debtors is a basis of SEPH's objection to discharge pursuant to § 727(a)(6) as set forth in Claim VIII of the First Amended Complaint for failure "to obey any lawful order of the court . . .. ".

Kirkpatrick improving its position in obtaining new collateral from the Stewart Entities with the assistance of the Debtors was to improve its position, not subvert the bankruptcy process.  The allegations do not even hint at bribery or extortion.  The allegations therefore fail to state a claim for denial of discharge under § 727(a)(4)(C).  Accordingly,

IT IS ORDERED that the Motion to Dismiss of Defendants, David A. Stewart and Terry P. Stewart [Doc. 21] insofar as it seeks dismissal of Claim for Relief V of the Plaintiff's First Amended Complaint Objecting to Discharge [Doc 14] based upon 11 U.S.C. § 727(a)(3) is hereby **Denied**.

IT IS FURTHER ORDERED that the Motion to Dismiss of Defendants, David A. Stewart and Terry P. Stewart [Doc 21] insofar as it seeks dismissal of Claim for Relief VI of the Plaintiff's First Amended Complaint Objecting to Discharge [Doc 14] based upon 11 U.S.C. § 727(a)(4)(C) is hereby **Granted**, and said Claim for Relief is hereby **Dismissed** with prejudice.

**# # #**

10