

**Dated: April 27, 2018**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                                    )
                                          )
David A. Stewart,                         )          Case No. 15-12215-JDL
Terry P. Stewart                          )          Ch. 7
                                          )          **Jointly Administered**
                          Debtors.        )

**MEMORANDUM OPINION AND ORDER
<u>FOR DISGORGEMENT OF FEES</u>**

### I. Introduction

For more than two years after being retained by the Debtors to represent them in this bankruptcy case and numerous adversary proceedings associated with it, Debtors' Counsel Ruston Welch ("Welch") failed to disclose the amount, source or agreement for the payment of any attorney's fees to him. The question before the Court is whether Welch's failure to comply with the fee disclosure obligations imposed by the Bankruptcy Code and Rules constitutes sufficient grounds for the Bankruptcy Court to exercise its inherent power and discretion to deny some or all fees and costs paid to Welch and to direct Welch to disgorge fees and costs already received. Before the Court for

consideration are the *Motion for Disgorgement of Compensation Paid to Welch Law Firm P.C., Denial of Unpaid Compensation and Reimbursement of Property of the Estate Transferred to Third Parties Pursuant to 11 U.S.C. § 329(a) and Fed. R. Bankr. P. 2016, 2017, and 9014*, filed on October 20, 2017 by SE Property Holdings, LLC ("SEPH") (the "*Motion*"), the *Response of Ruston C. Welch and Welch Law Firm P.C. to SE Property Holdings, LLC's Motion for Disgorgement*, filed on December 4, 2017 (the "*Response*"), the *Reply to Ruston C. Welch and Welch Law Firm's, P.C. Response to Motion for Disgorgement*, filed by SEPH on December 18, 2017, and *Kirkpatrick Bank's Response to SEPH's Motion to Disgorge*, filed on November 3, 2017.[1]  The following constitute Findings of Fact and Conclusions of Law as required to be made by the Court pursuant to Fed. R. Bankr. P. 7052 and 9014.[2]

## II. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(a) and the Order of Reference issued by the United States District Court for the Western District of Oklahoma as Local Rule LcvR 81.4(a).  Venue is proper pursuant to 28 U.S.C. § 1409.

---

[1] The *Motion*, *Response* and the *Replies* under consideration by the Court were originally filed "under seal". The reason that pleadings relating to the possible disgorgement of fees were filed under seal was out of concern that certain facts relating to funds received by and fees paid to Welch were the subject of a Confidentiality Order entered by the United States District Court for the Southern District of Alabama relating to settlement of environmental tort claims of certain parties represented by Welch arising out of the British Petroleum Deepwater Horizon oil spill in the Gulf of Mexico in April 2010 (the "BP claims"). Much of the concern for confidentiality was waived by Counsel Welch's filing of his *Amended Disclosure of Compensation of Attorney for Debtor* on September 20, 2017 [Doc. 464], which set forth in detail the funds received pursuant to settlement of the BP claims. As a consequence, the Court has entered its *Order Unsealing Pleadings and Directing Clerk to file Pleadings* on March 27, 2018 [Doc. 570].

[2] All future references to "Bankruptcy Rule" or "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

This contested matter is procedurally governed by Rule 9014. The statutory predicate lies in 11 U.S.C. § 329(a).[3] This is a core proceeding arising under 28 U.S.C. § 157(a)(2)(A), (B) and (O).

### III. Findings of Fact

This case was commenced by SEPH's filing of an Involuntary Petition under Chapter 7 in the United States Bankruptcy Court for the Southern District of Alabama on September 30, 2014. After several months of litigation related to the allegations in SEPH's Involuntary Petition, in which Debtors were represented by Alabama counsel, on March 18, 2015, the Bankruptcy Court entered Orders for Relief. [Docs. 57 & 58].[4] On May 1, 2015, Debtors filed their *Schedules, Statement of Financial Affairs, Statement of Intent and Disclosure of Compensation of Attorney for Debtor* in the Alabama Bankruptcy Court. [Doc 89]. The *Disclosure of Compensation of Attorney for Debtor* indicated that the Debtors' attorneys, Allen Christian and E. Russell March, had undertaken representation at hourly rates of $325 and $275 per hour, respectively, and received a retainer of $24,829.20. [Id. at pg. 47-48].[5]

---

[3] Unless otherwise specifically noted, all subsequent references to statutes, "Code", "Section", or "§" are to the United States Bankruptcy Code, Title 11 U.S.C. § 101 *et seq*.

[4] The cases of Debtors David A. Stewart (Case No. 15-12215) and Terry P. Stewart (Case No. 15-12216) have been administratively consolidated. Unless otherwise indicated, all "Doc." numbers are to Case No. 15-12215.

[5] In addition to the separate Disclosure of Compensation of Attorney for Debtor, ¶ 9 of the Statement of Financial Statement Affairs requires disclosure of "payments related to debt counseling or bankruptcy". The Statement of Financial Affairs filed in the Alabama Bankruptcy Court checked "None" as to any such payments. In the case of an involuntary bankruptcy "none" might be the correct answer given the fact that the disclosures required are payments " made within one year *immediately preceding* the commencement of this case." (Emphasis added.). It is unlikely that a putative debtor would have retained bankruptcy counsel before the involuntary petition was filed. Similarly, when Welch filed an Amended Statement of Financial Affairs on September 29, 2015, he checked the box "None" indicating that no payments had been made to him in the one year preceding the filing of the petition. [Doc. 196, pg. 5].

On June 12, 2015, the Alabama Bankruptcy Court entered its *Order Granting Debtors' Motions to Change Venue* transferring the cases to the United States Bankruptcy Court for the Western District of Oklahoma. [Doc. 115].  The same day that the Alabama Bankruptcy Court entered its order transferring the case to Oklahoma, Debtor David Stewart contacted Welch to set up a meeting to discuss representation. [Doc 522 ¶ 10]. On June 15, 2015 Welch agreed to represent the Debtors in their pending Chapter 7 cases. [Id. at ¶ 11].  On June 17, 2015, a Representation Agreement was executed between Debtors and Welch. [Doc. 522 ¶ 12; Doc 522, Ex. 2].   On the same date, Welch filed his Notice of Appearance. [Doc. 121, corrected at Doc. 122].  The existence of the Representation Agreement or any payments made under it would not be made known to the Court or the creditors (with the possible exception of Kirkpatrick Bank) or the Chapter 7 Trustee until, at the earliest an *in camera* hearing on August 30, 2017, or as late as the filing of Welch's *Supplemental Statement to Amended Disclosure of Compensation of Attorney for Debtors* filed on December 4, 2017. [Doc. 522).  At an *in camera* proceeding on August 30, 2017, at which Welch disclosed his receipt of the BP settlement funds and the payment of his bankruptcy fees, the Court directed Welch to provide the Court with documentation regarding settlement of the BP claims and, without delay, to file his Rule 2016(b) disclosures.

On September 14, 2017, Welch filed his *Disclosure of Compensation of Attorney for Debtor* reflecting that as of July 31, 2017, he had been paid $348,404.41 for his bankruptcy services to Stewart and the non-debtor related entities involved in adversary proceedings. [Doc. 461].  The Disclosure did not reflect the source of the payments.  On September 20, 2017, Welch filed his *Amended Disclosure of Compensation of Attorney For Debtor* which added a separate schedule detailing the receipt of BP settlement proceeds,

the sources of compensation paid to Welch for bankruptcy services and the dispersal of settlement proceeds to other parties, including Kirkpatrick Bank. [Doc. 464]. This *Amended Disclosure of Compensation of Attorney for Debtor* indicated Welch had been paid the sum of $178,943.38 for 2016 and $169,461.03 for 2017. [Doc. 464, pg. 3]. On December 4, 2017, Welch filed his *Supplemental Statement to Amended Disclosure of Compensation of Attorney*. [Doc. 522]. The Supplement, consisting of twenty (20) pages, provided a detailed, chronological narrative concerning Welch's financial dealings with Stewart, the related entities, family members and other counsel.

It is not disputed that Welch never filed a Rule 2016(b) Disclosure of Compensation of Attorney for Debtor from the time he undertook representation of the Debtors (and their thirteen (13) affiliated limited liability companies) in June 2015 until the Court ordered him to do so at the *in camera* proceeding on August 30, 2017. During this two year time period Welch paid himself fees and expenses for the bankruptcy case and adversaries a total of $348,404.41. [Doc. 464, pg. 3].[6] The source of all of these payments was from proceeds of the tort claims against British Petroleum arising out of the April 2010 Deepwater Horizon oil spill in the Gulf of Mexico made by affiliates Neverve, LLC, Shimmering Sands Development Company, LLC, S&S, LLC, and Zeke's Lady, LLC, with whom Welch had entered into contingent fee agreements. [Id. at pg. 4-5]. These proceeds (but not in their entirety) were applied to the then outstanding hourly rate fees and expenses incurred in Welch's representation of the Debtors, other defendants in related adversary proceedings

---

[6] This case has given rise to an extraordinary number of hearings and filings, including a four (4) day evidentiary hearing on the Debtor's *Motion for Order Directing Trustee to Abandon Personal Property* [Doc. 214] and a twelve (12) day evidentiary hearing on *Joint Motion to Approve Compromise and Settlement Agreement* [Doc. 408] and *Second Joint Motion to Approve Compromise and Settlement Agreement*. [Doc. 472]. The *in camera* hearing was conducted during the course of the twelve (12) day hearing on the motion to compromise wherein it was disclosed for the first time as to the source of payment of attorney fees to debtors' counsel.

and debtor related entities. [Id.] [7]

## IV. Discussion

Resolution of the issues raised in SEPH's Motion involve the interplay between Bankruptcy Code §§ 329-330 and Rules 2016 and 2017. These statutes and rules work together to provide a framework for the systemic oversight of administrative costs, reasonableness of fees, and any questionable relationships of third-party payors to the debtor and the attorney in bankruptcy cases.

The starting point for analysis is § 329(a), which states:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Rule 2016(b) provides the following procedure for implementing § 329:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity.... A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

---

[7] For example, Welch still holds in his trust account $71,724.71 of proceeds from the settlement of the Neverve, LLC, tort claim against BP which have not yet been applied to fees and expenses for the bankruptcy case. Additionally, and as discussed in greater detail below, Welch paid Kirkpatrick Bank $173,939.41 representing 100% of the BP settlement with Shimmering Sands Development Company, LLC, in which David Stewart held a 50% membership interest.

Stated concisely, Rule 2016(b) requires debtor's attorneys to disclose at the outset all fees paid or agreements regarding fees to be paid, and thereafter they must disclose post-petition transactions within fifteen days. These disclosures enable the Bankruptcy Court to carry out its traditional role of scrutinizing carefully the compensation paid to the debtor's attorney, and "to prevent overreaching by an attorney and provide protection for creditors." *Jensen* v. *United States Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 848 (10th Cir. BAP 1997); *In re C. W. Mining Co.*, 440 B.R. 878, 885 (Bankr. D. Utah 2010) ("Attorneys representing debtors are required and expected to fully and candidly disclose all their agreements relating to compensation, the amount of compensation paid or agreed to be paid, and the source of payment.").

The disclosure requirements of § 329 are "mandatory [,] not permissive." *Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir. 1993); *In re Smitty's Truck Stop, Inc.*, 210 B.R. at 848. "An attorney is required to 'lay bare all of [his] dealings' concerning compensation agreements, payments, property transfers, etc. all made by, for, or on behalf of the debtor so that the court and parties are not forced to ferret out pertinent information". *Walton v. Whitcomb (In re Whitcomb),* 479 B.R. 133, 140 (Bankr. M.D. Fla. 2012) (quoting *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991)); *Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881 (9th Cir. 1995). The fact that Welch first became involved in the case long after it had been filed is irrelevant. *Mapother & Mapother P.S.C. v. Cooper (In re Downs),* 103 F.3d 472, 477 (6th Cir. 1996) (an attorney who was retained to represent a debtor in a case after it is been filed is still required to make a § 329 disclosure); *In re Hackney*, 347

7

B.R. 432, 442-443 (Bankr. M.D. Fla. 2006) ("Counsel was required to file and transmit a Rule 2016 Statement disclosing the terms of his own compensation with the debtors immediately upon substituting in as their counsel.).  "Negligent or inadvertent omissions 'do not vitiate the failure to disclose.'"  *In re Smitty's Truck Stop, Inc.*, 210 B.R. at 848 (quoting *In re Park-Helena,* 63 F.3d 877, 881 (9th Cir. 1995)); *In re Whitcomb*, 479 B.R. at 140 (failure to make full measure of disclosures "required under the Bankruptcy Code and Rules are unacceptable even if they arise merely as a result of negligence or inadvertence.").

The fact that the source of the funds to pay Stewarts' legal fees was from third-party payors rather than from Stewart did not alter Welch's obligation for proper disclosure of the fees.  The language of § 329(a) makes it clear that it requires a debtor's attorney to disclose "*the source of such compensation*." See *In re The Harris Agency, LLC*, 468 B.R. 702, 707 (Bankr. E.D. Pa. 2010) ("[I]t being settled that 'under section 329 and Bankruptcy Rule 2016(b) [an attorney's disclosure statement] must disclose the source of ... compensation, even if the source is not the debtor but a third-party entity.'" (quoting 3 *Collier on Bankruptcy* ¶ 329.03 (15th Ed. 2009)); *In re Frye*, 570 B.R. 21, 31 (Bankr. D. Vt. 2017); *In re Greco,* 246 B.R. 226, 229-30 (Bankr.E.D. Pa. 2000).

Welch argues that the contingent fees he received for representing the affiliates in the BP claims were not for services rendered "in connection with" the bankruptcy case and therefore not subject to disclosure as required by § 329(a). [Response, pg. 6].  Welch misreads the statute.  Section 329 requires disclosure "of the compensation paid or agreed to be paid ... for services rendered or to be rendered in contemplation of *or* in connection

with the case by such attorney, *and the source of such compensation*." (Emphasis added). When Welch elected to take the proceeds from the BP claims and apply them to pay the hourly fees earned by him in the bankruptcy, those proceeds became payments made "in connection" with the bankruptcy case.  It is irrelevant whether or not the proceeds for services rendered related to the BP claims on behalf of the affiliates, *prior to their application to the payment of Welch's bankruptcy fees*, could be denominated as not "in connection with" the bankruptcy.  The fact that Welch "gratuitously" took proceeds from the contingency fees earned in BP claims to be applied for his bankruptcy fees doesn't change the fact that they were the source of his payment for the bankruptcy and had to be disclosed.  Had Welch not applied the proceeds from the BP claims of the non-debtor affiliates to pay his bankruptcy fees he *might* have an argument that the proceeds were not "in connection with" the bankruptcy and thus did not need to disclose the source of payments. But he *did* pay himself for his bankruptcy services with those proceeds.  To find that Welch's fees were not required to be disclosed would be to read out of § 329(a) the complete transparency required, including disclosure of the "source of such compensation." Simply put, bankruptcy counsel is required disclose by whom, how and how much he got paid.

Welch also argues that he performed valuable services for the estate, and that disgorgement of fees received would be inequitable.  The Court disagrees for two reasons. First, while the Court recognizes that Welch is a very talented attorney and has represented Stewart and the affiliates extremely well, "the law is clear that the failure to properly disclose compensation received is in and of itself grounds for disgorgement".  *In*

9

*re Investment Bankers, Inc*., 4 F.3d at 1565.  Second, even if the Court did not question

the reasonableness of the $348,000 charged by Welch, "the fact that the fee may or may

not have been reasonable or have been earned does not justify a disregard for the rules

of disclosure."  *In re Woodward*, 229 B.R. 468, 475 (Bankr. N.D. Okla. 1999).  Welch also

argues because the funds which paid his fees were not "property the estate" there was no

harm to the estate resulting from such payments.  Even if the funds used to pay the fees

were not property of the estate, the court would still have the authority to review them

under Section 329(a).  *In re W.T. Mayfield Sons Trucking Co., Inc*., 225 B.R. 818 (Bankr.

N.D. Ga. 1998).  Furthermore, contrary to that argued by Welch, the Court may sanction

failure to disclose "regardless of actual harm to the estate."  *In re Smitty's Truck Stop, Inc*.,

210 B. R. at 849.[8]

Neither is it determinative as to whether any disgorgement should be ordered that

Welch acted with a "pure heart" and had no subjective intent to violate the Code and the

Rules in failing to disclose what and from whom he had been paid.  The purpose behind

§ 329(a) would be defeated if counsel were permitted to make a "covert decision that the

undisclosed fee was so unrelated to the bankruptcy case that its disclosure was not

required, and eliminating the possibility of Court review in the process."  *In re Woodward*,

229 B.R. 468, 475 (Bankr.N.D. Okla. 1999); *In re Mayeaux*, 269 B.R. 614, 628 (Bankr. E.D.

---

[8] In addition to the $348,404 which Welch applied to his bankruptcy fees, SEPH seeks disgorgement of the $173,939.44 paid to Kirkpatrick Bank from settlement of the Shimmering Sands' BP claim (see footnote 7 above).  The Court does not see the payment to Kirkpatrick Bank as an appropriate subject of disgorgement under the Motion before the Court.  First, Welch did not utilize those funds to pay himself or otherwise use them for his benefit.  Second, he doesn't have the funds to disgorge.  If there are legal or equitable grounds to avoid the payment to Kirkpatrick Bank, those remedies properly exist outside of this attempt to disgorge Welch of his fees.

Tex. 2001). Furthermore, failure to comply with the disclosure rules is sanctionable "even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule". *In re Park-Helena Corp.,* 63 F.3d 877, 880 (9th Cir. 1995); *In re Campbell*, 259 B.R. 615 (Bankr. N.D. OH. 2001).

For all the above reasons, the Court's inescapable conclusion is that Welch's failure to disclose the amount and source of his fees and expenses for the bankruptcy and related adversary proceedings for over two years and making such disclosures only after directed by the Court to do so constitutes a clear violation of § 329 and Rule 2016(b). The question before the Court is what should be the consequences of such a violation(s), up to the ultimate sanction of disgorgement of all fees received by Welch for the bankruptcy and related adversaries.

The law is clear that the failure to comply with § 329 and Rule 2016(b) constitute sufficient grounds, under appropriate circumstances, for the Court to exercise its inherent power and discretion to deny all fees and costs paid to Welch and to direct disgorgement of up to all fees and costs already received. *Smitty's Truck Stop, Inc.,* 210 B.R. at 848 ("[A]n attorney who fails to comply with the disclosure requirements of § 329 and Rule 2016(b) forfeits *any right* to receive compensation for services rendered on behalf of the debtor and may be ordered to return fees already received."); *Investment Bankers*, 4 F.3d at 1565 ([A]n attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services rendered on behalf of the debtor, (citations omitted), and a court may order an attorney sua sponte to disgorge funds already paid to the attorneys (citations omitted)."); *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714,

721 (6ᵗʰ Cir. 2001)("Bankruptcy courts have broad and inherent authority to deny any and all compensation an attorney fails to satisfy the requirements of the Code and Rules."). *In re Wood*, 408 B.R. 841 (Bankr. D. Kan. 2009).

Many courts adopt a rigid, "zero-tolerance" approach commanding denial of fees and disgorgement where counsel has failed to make proper disclosure under § 329(a) and Rule 2016.  See e.g. *Downs,* 103 F.3d at 477; *Kisseberth*, 273 F.3d at 721.  However, it is also true that when a bankruptcy court exercises its inherent power to deal with an attorney's noncompliance with disclosure obligations imposed by the Bankruptcy Code and Rules, the court may choose to temper that power with reasonable discretion under the circumstances of the case.  *In re Brown,* 371 B.R. 486, 499 (Bankr. N.D. Okla. 2007) ("Disgorgement of fees as a result of inadequate disclosure by counsel is a matter left to the sound discretion of the bankruptcy court."); *In re Woodward*, 229 B.R. at 473.  The imposition of the disgorgement order should be "'commensurate with the egregiousness of the conduct' and will depend on the particular facts of each case."  *In re Hackney*, 347 B.R. at 443 (citing *Mapother & Mapother, P.S.C. v. Cooper, (In re Downs)*, 103 F.3d 472, 479-80 (6ᵗʰ Cir. 1996)); *Smitty's Truck Stop, Inc.*, 210 B.R. at 846.

This Court considers factors determining the degree of sanctions for non-disclosure on a case-by-case basis to include, without limitation: (1) the attorney's experience level in the subject area of practice, (2) the attorney's willfulness or recklessness, (3) whether the violation is a mere technical violation, (4) the attorney's level of cooperation with parties in interest to rectify the noncompliance, (5) the reason for the noncompliance, (6) harm to the estate and mitigation of any harm, (7) prior instances of noncompliance and the

12

circumstances surrounding the those circumstances, (8) the promptness of any cure of the subject noncompliance, (9) steps taken by the attorney to prevent similar conduct in the future, (10) the excessiveness of compensation and expenses charged by the attorney and – although alone the means cannot justify the ends – results obtained for the estate. *In re Howard Avenue Station,* LLC, 568 B.R. 146, 153-154 (Bankr. M.D. Fla. 2017).  The Court also considers the Tenth Circuit general law applicable to attorney sanctions, not necessarily involving non-disclosure under the bankruptcy law, such as (1) whether the sanction is the minimum amount that will serve to deter adequately the undesired behavior, (2) whether the offender has the ability to pay the sanctions, (3) past sanction history, (4) experience, and (5) severity of the violations. *White v. General Motors Corp.*, 908 F.2d 675 (10th Cir. 1990) (factors applicable to violation of Rule 11); *In re Rossmiller*, 148 B.R. 326, 329 (D. Colo.1992).

Welch is an attorney with more than thirty years experience with an emphasis on civil litigation, transactional matters and bankruptcy.  He is regarded by this Court as one of the most able bankruptcy practitioners that appear before it. Given his skill and experience, the Court finds it incredulous that Welch would pay himself $348,404 in fees related to the bankruptcy over a two year period and not deem it appropriate to make *any* disclosure of the same before being ordered to do so by the Court.  This non-disclosure cannot be regarded as a mere technical violation.  As discussed above, the non-disclosure cannot be justified on the basis that the BP settlement proceeds were not connected to the bankruptcy.  While Welch's services to the non-debtors for assertion of the BP claims might not be "in connection with" the bankruptcy, the source and amount of the funds by

13

which Welch was paid for his bankruptcy services was required to be disclosed. What is also troubling to the Court is that it may well be that had not SEPH or the Court raised the issue of attorney's fees, it would appear, based upon the arguments now asserted by Welch, that no disclosure would ever have been made.

The Court cannot help but view the non-disclosure of the attorney's fees not as an isolated event but one within the broader context and history of this case, in particular with regard to the lack of candor and veracity of the Debtors. Much, but admittedly not all, of the genesis of this seemingly interminable litigation lies in SEPH's distrust of the Debtors as a result of what SEPH perceives as a grand scheme to conceal assets. The Court has also openly expressed its concern as to whether the Debtors have been forthcoming in disclosing all of their and the non-debtor affiliates' assets and an accurate value of those assets. This lack of candor has extended to the attorney's fees which Welch has been paid. An issue has also been raised with regard to the Debtor's, non-affiliates and Kirkpatrick Bank's "transfer of interests" alleged by SEPH to be in violation of this Court's Preliminary Injunction of January 5, 2017. In this atmosphere of distrust between the parties, the last thing that was needed was more suspicion and distrust generated by the perception that the Debtors and/or their counsel were concealing the payment of more than a third of a million-dollars in attorney's fees for services rendered in this bankruptcy. But the seriousness of the non-disclosure of attorney's fees is further compounded by evidence of additional lack of candor concerning the fees.

On August 3, 2016, Welch received $144,591.95 representing his contingency attorney's fee for representing the Stewart related entities Neverve, LLC, Shimmering Sands Development Company, LLC, S&S, LLC, and Zeke's Lady, LLC's. These sums

14

were applied to the then outstanding hourly-rate fees and expenses incurred for his representation in the bankruptcy case and related adversaries. Also on August 3, 2016, Welch received $528,394.39 representing his clients' shares (which did not include the contingent attorney fee portion) of the BP claims settlements. Neverve's share of $203,812.56 was subsequently applied to the payment of the Debtors' and the affiliates' attorney's fees due Welch in the bankruptcy and adversaries. Welch's time records indicate numerous telephone conferences and email correspondence with David Stewart regarding the settlement of the BP claims. Beginning with the August 31, 2016, (and running through mid-2017), monthly billing statements reflect application of BP funds to the outstanding balances due for services in the bankruptcy and adversaries. If Stewart wasn't writing checks either on his own behalf or on behalf of the non-debtor affiliates for the payment of Welch's fees, what did he think was the source of those payments? It strains credulity that Stewart didn't know the source of the payments was the BP settlement funds. Yet, when asked at his deposition taken on June 27-28, 2017, whether any of the entities with which he was affiliated, other than Zeke or ZLM, had ever received funds related to the BP claims he answered, "No". [Tr. of 8/30/2017, Doc. 466-2, pg. 110]. When asked whether any proceeds or payments of funds had been paid on a BP claim by Neverve, Stewart answered, "I don't know." [Tr. Of 8/30/2017, Doc. 466-2, pg.111-112].

The non-disclosure of Welch's fees, and importantly the source of those funds, has also raised an issue as to whether potential assets of the Debtor estates have been properly handled. David Stewart holds a 50% membership interest in Shimmering Sands Development Company, LLC. At the December 10, 2015, hearing on the Debtor's Motion to Abandon Stewart testified that Kirkpatrick Bank did not have a security interest in the

15

Shimmering Sands BP tort claim. [Tr., Doc. 243, pg. 60-61].  At the continued hearing on

the Motion to Abandon on January 20, 2016, when the Trustee heard that Kirkpatrick might

not have a security interest in the BP claim, the Trustee testified that "this is the first time

I've - I've analyzed all the BP claims, and this is the first I've heard that, in fact, one of the

BP claims might be unencumbered-and if that's the case, well, then there are significant

additional value there ...." [Tr., Doc. 270,g. 187 pg. 187].  In closing argument on the same

day, January 20, 2016, Welch stated as to "the $600,000 BP claim, if the court or Mr.

Gould, believes it has any value, we welcome him to retain it or transferred to him, but it's

an opt-out claim which for years has never been heard ... (and) if the claim amount is fully

valid and to pay $600,000 that may be years down the road." [Tr., Doc. 270, pg. 201].

There is little doubt that as of January 20, 2016, Kirkpatrick did not hold a valid

security interest, let alone a perfected security interest, in the Shimmering Sands BP

claim.[9]  Five days later, on January 25, 2016, Welch and Kirkpatrick's counsel discussed

Kirkpatrick's request to encumber the Shimmering Sands BP claim. [Doc. 522-5, pg.49 of

---

[9] Kirkpatrick had originally asserted that its security interest in the Shimmering Sands BP proceeds arose by virtue of collateral described in its 2007 Mortgage and the Security Agreement with Oklamiss as "commercial tort claims."  The BP tort claims were not even in existence until after the oil spill in 2010. Under UCC § 9–204(b)(2) in order for a security interest to attach to a commercial tort claim the tort claim had to be in existence at the time of the creation of the security interest (in other words, an "after-acquired collateral clause" in the security agreement will not reach future commercial tort claims) and must describe the tort claim with greater specificity than simply "all tort claims." See UCC § 9–108(e). At the hearing on the Motion to Approve Compromise and Settlement Agreement on August 31, 2017, in response to a direct question from the Court, the President of Kirkpatrick testified that prior to March 2016, Kirkpatrick did not have a security interest in the Shimmering Sands BP claim. [Tr., Doc. 466-3, pg. 185].  Kirkpatrick's counsel later inferred that Kirkpatrick's President was legally mistakenly in testifying that the Shimmering Sands BP claim was not perfected under the 2007 mortgage. [Tr. Hearing 12/21/2017, Doc. 545-1, pgs. 78-79].  He wasn't.  It appears to the Court that as a matter of law under UCC § 9-204(b)(2) the security interest did not attach and become perfected until March 2016, after the probable settlement of the BP claim became apparent.

16

217].  On February 1, 2016, Shimmering Sands granted Kirkpatrick a security interest in the BP claim [Kirkpatrick, Ex. 49] which was perfected on March 23, 2016, by the filing of a Uniform Commercial Code Financing Statement.  Settlement and payment of the Shimmering Sands BP claim was not "years down the road"; rather, settlement was reached in the spring of 2016 with final payment being made on August 3, 2016. Recognizing Kirkpatrick's now perfected security interest in the BP proceeds, Welch paid Kirkpatrick $173,939.41 representing 100% of the BP settlement with Shimmering Sands (of which David Stewart held a 50% membership interest).

The Court points out the matters pertaining to Mr. Stewart's testimony as to his knowledge of the payment of attorney's fees and the encumbering of the Shimmering Sands BP claims solely to demonstrate that there are serious collateral consequences of the obligation of full disclosure of attorney fees under Rule 2016.  The failure to make proper disclosure is not a mere technical violation of the Bankruptcy Code and Rules, but can have real consequences.  In this case, the failure to make proper disclosure has engendered even greater suspicion and mistrust than already existed that the Debtors have been less than forthcoming.

While this Court undoubtedly has the authority, should it so decide to exercise it, to deny Welch any compensation and order disgorgement of all of Welch's fees received, that authority does not compel that it must do so.  The Court is guided by the overriding principle in applying sanctions that "the appropriate sanction should be the least severe sanction adequate to deter and punish" the offender and deter future violations of the rules. *White v. General Motors, Inc.*, 908 F.2d 675, 684 (10th Cir. 1990).  In mitigation of the imposition of sanctions is that, to this Court's knowledge, Welch has not been previously

sanctioned. While Welch is a seasoned bankruptcy practitioner, the bulk of his practice has been representing creditors or debtors in Chapter 11 cases which require applications for court approval for employment of counsel and applications for court approval of all fees. It appears that he has not had much experience representing debtors in Chapter 7 in which court approval is not required for either employment or payment of counsel. It may well be that Welch, although he would have been wrong in doing so, overlooked the attorney fee disclosure requirements imposed upon counsel in all chapters of the Bankruptcy Code.

There is also a practical impediment in ordering Welch to disgorge any significant amount of funds which he received and applied to his bankruptcy fees. The source of these funds was from the settlement of the BP claims of four non-debtor entities, all of which, with the exception of Shimmering Sands, are not even alleged by SEPH to be targets to be substantively consolidated into the Stewarts' bankruptcy estate. As noted above, the funds allocable to Shimmering Sands were not kept by Welch but passed through to Kirkpatrick Bank. The Court does not believe it has the authority to order the funds from three of the four non-debtors which became the property of Welch to be paid into the debtor's estate which never had an interest in them. If anything, the Court would have to order the funds repaid to the non-debtors. Ordering Welch to return the funds to the non-debtor entities would be a futile act because, assuming Welch even had any funds to do so, those entities would in all likelihood simply repay Welch the fees to which he was entitled under their agreements with him.

The Court also believes that by its pronouncements from the bench and in this Order Welch has been sufficiently chastened so as to deter him from failing to make all required disclosures in future matters both in this and other bankruptcy cases. The Court

18

also believes that ordering disgorgement of all fees as sought by SEPH (or even a substantial portion of such fees) would be financially catastrophic to someone as Welch engaged in a largely solo practice.  The Court finds denial or disgorgement of all Welch's fees would be unduly harsh in light of the beneficial successful work he performed for the Debtors, and the fact the Debtor estates were not the source of the payments for his bankruptcy work.[10]   At the same time, the Court regards the seriousness of Welch's conduct and non-disclosure to require something more than a mere admonition.  Accordingly, in the exercise of this Court's discretion a financial sanction is deemed appropriate, and

**IT IS ORDERED** that Ruston Welch pay to the Chapter 7 Panel Trustee, Douglas Gould, for the benefit of this bankruptcy estate,  the sum of $25,000 within thirty (30) days from the date of the entry of this Order.

# # #

---

[10] The Court considers these factors only in assessing the extent of the sanction.  As noted previously, however, neither the quality of services, their benefit to the estate nor the fact of payment by non-estate funds has any bearing on Welch's obligation of full disclosure.