**Dated: July 10, 2018**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| David A. Stewart, | ) | Case No. 15-12215-JDL |
| Terry P. Stewart | ) | Ch. 7 |
| | ) | **Jointly Administered** |
| Debtors. | ) | |

### ORDER DENYING MOTION TO AMEND OR ALTER
### ORDER FOR DISGORGEMENT OF FEES

This matter came on for consideration upon *SE Property Holdings, LLC's Motion to Alter or Amend Order on Disgorgement, Pursuant to Bankruptcy Rule 9023* filed on May 11, 2018 (the "Motion") [Doc. 581] and the *Response of Ruston C. Welch and Welch Law Firm P.C. ("Welch") to SE Property Holdings, LLC's ("SEPH") Motion to Alter or Amend Order on Disgorgement* filed on May 25, 2018 (the "Response") [Doc. 586].

On April 27, 2018, the Court entered its *Memorandum Opinion and Order for Disgorgement of Fees* (the "Disgorgement Order") [Doc. 576; *In re Stewart*, 583 B.R. 775 (Bankr. W.D. Okla. 2018)]. The Order directed Debtors' attorney, Ruston Welch, and his law firm, Welch Law Firm P.C., to pay to the Chapter 7 Trustee the sum of $25,000 as a sanction for Welch having failed to comply with the attorney's fee disclosure obligations

imposed by 11 U.S.C. § 329(a) and Fed.R.Bankr.P. 2016(b).[1]  SEPH seeks reconsideration, amendment or clarification of the Court's Disgorgement Order by having the Court (1) make a finding that the Disgorgement Order did not constitute a determination that the Trustee could not recover proceeds received by Welch in settlement of tort claims in favor of non-debtor affiliates Neverve, LLC ("Neverve"), and Shimmering Sands Development Company, LLC ("Shimmering Sands"), in which David Stewart was a member, against British Petroleum resulting from the 2010 Deepwater Horizon oil spill in the Gulf of Mexico, and (2) reconsider the $25,000 sanction (disgorgement) imposed by the Court and order Welch to disgorge the entire amount of attorney's fees received by him in the amount of $348,044.41.  The following constitutes the Court's findings of fact and conclusions of law pursuant to Rules 7052 and 9014.

### 1. Did the Court's Disgorgement Order Intend to Preclude an Action by the Trustee to Recover BP Settlement Proceeds payable to Neverve, LLC, and/or Shimmering Sands Development Company, LLC?

As discussed in the Court's Disgorgement Order, the source of Welch's fees of $348,404.41 for the bankruptcy and related adversaries was from proceeds of the settlement of tort claims by several Stewart affiliates, including Neverve and Shimmering Sands against British Petroleum arising out of the April 2010 Deepwater Horizon oil spill in the Gulf of Mexico.  Welch had contingent fee employment agreements with Neverve and Shimmering Sands.  On August 3, 2016, Welch received $144,591.85 as proceeds of the settlement of the BP claims. [Doc 464, pg. 4].  Of this amount, $46,500 was

---

[1] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

2

allocated to the claim of Shimmering Sands, all of which was applied by Welch to payment of his bankruptcy attorney fees. The amount of $73,638.45 was allocated to the claim of Neverve, again all of which was applied to the payment of Welch's bankruptcy fees.

Also on August 3, 2016, Welch received a second wire transfer to his account in the amount of $528,394.39 for the settlement of BP claims. Of this amount, $173,939.44 was allocated to the claim of Shimmering Sands. [Doc. 464, pg. 4]. Apparently because the contingent fee on the Shimmering Sands claim had been paid on receipt of the first wired funds, the entire $173,939.44 was sent by Welch to Kirkpatrick Bank "at the request and direction of Kirkpatrick Bank" which was asserting a security interest in the Shimming Sands BP claim. Welch allocated $275,572.27 to the Neverve claim, from which Welch paid his bankruptcy attorney's fees in the amount of $203,812.56, thus leaving in Welch's trust account (as of September 2017) the sum of $71,724.71. [Id. at pgs. 4 & 5].

SEPH has asserted in pleadings and in argument before the Court that at least fifty percent (50%) of the $173,939.44, or $86,969.72, representing proceeds of the Shimmering Sands BP claim which Welch paid to Kirkpatrick Bank and the $203,812.56 of the Neverve BP claims settlement were distributions for David Stewart's membership interests and thus property of the estate to be paid to the Trustee. While SEPH has raised the issue numerous times, it has neither by motion nor adversary proceeding sought turnover of the Shimmering Sands or Neverve funds or their value. In its Motion SEPH has requested the following:

> SEPH seeks clarification that the Disgorgement Order did *not* constitute a ruling that the BP proceeds paid to Neverve or Shimmering Sands were *not* property of the estate and that the court's ruling was limited to deciding the disgorgement issue before it based on non-disclosure. (Emphasis original.).

3

Welch asserts that SEPH's Motion "is really seeking declaratory relief or an advisory ruling beyond the scope of the Disgorgement Motion and Disgorgement Order." [Doc. 586, pg.2]. The Court agrees that SEPH's request for a "clarification" of the Court's Disgorgement Order comes perilously close to a request for an advisory opinion. This Court "is guided by the maxim that a bankruptcy judge should not render an advisory opinion." *In re Trichilo*, 540 B.R. 547, 551 (Bankr. M.D. Pa. 2015); *Norvell v. Sangre de Cristo Development Co. Inc.*, 519 F.2d 370, 375 (10th Cir. 1975) ("It is fundamental that federal courts do not render advisory opinions and that they are limited to deciding issues in actual cases and controversies."); *Columbian Financial Corp. v. BancInsure Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011) ("Article III has long been interpreted as forbidding federal courts from rendering advisory opinions... it is not the role of the federal courts to resolve abstract issues of law.  Rather, they are to review disputes arising out of specific facts when the resolution of the dispute will have practical consequences to the conduct of the parties."); *King Resources Stockholders Protective Committee v. Baer (In re King Resources Co.)*, 651 F.2d 1326, 1331 (10th Cir. 1980) ("It is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give advisory opinions on moot questions or abstract propositions.").  On the other hand, the Court has authority to enter an order that interprets or clarifies a prior order.  *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151, 129 S.Ct. 2195, 2205 (2009).

If SEPH were asking for this Court to find that the funds held by Welch were or were not property of the estate, the Court would deem such a request to be seeking an advisory opinion which the Court would not do.  SEPH, however, is asking that the Court clarify that it did *not* decide the "property of the estate issue", and the only issue which it decided was "the disgorgement issue before it based on non-disclosure". [Motion, Doc. 581, pg. 4].  The

4

Court concurs. The only issue before it was what sanction was appropriate for Welch's failure to comply with Rule 2016 and deter him from future misconduct. That is exactly what the Court decided, nothing more and nothing less.

**2. SEPH's Assertion That There Was No Evidentiary Basis for the Court's $25,000 Sanction for Welch's Non-Disclosure of His Attorney's Fees.**

SEPH asserts that the Court erred in its imposition of the $25,000 sanction against Welch because there was no evidence of Welch's net worth against which to determine the appropriateness of the sanction. SEPH appears to conflate the relevance of net worth in determining an award of punitive damages with the imposition of Rule 9011 sanctions or sanctions for violation of Rule 2016.

As was pointed out in the Court's Disgorgement Order, in determining the appropriate sanctions to impose against attorney misconduct courts have been guided by the principle that the primary purpose of an award of sanctions is to deter attorneys' and litigants' misconduct. *White v. General Motors Corp.*, *Inc.*, 908 F.2d 675, 684-85 (10th Cir. 1990). Thus, many courts, including the Tenth Circuit, have held that the sanctioning court should impose the least severe sanction necessary to achieve that goal. *White*, 908 F.2d at 684.

Ability to pay may also be a factor to be considered in assessing the sanction; however, the Tenth Circuit has addressed the manner in which evidence of the sanctioned party's ability to pay is to be presented to the court. In *White,* the Tenth Circuit explained that one*'s* "inability to pay what the sanctioning court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanction to come forward with evidence of their financial status." *Id.* at 684-85. In his Response to SEPH's Motion for Disgorgement, Welch did not

raise the issue of his financial inability to respond to any sanction imposed by the Court. "Viewing the financial status [of Welch and Welch P.C.] as an affirmative defense leads to the conclusion that the Court should not compel them to divulge their net worth. Because the burden is upon the sanctioned party to present evidence of its inability to pay an award, this Court finds that disclosure of [Welch and Welch P.C.'s] net worth cannot be compelled." *In re Masters,* 224 B.R. 714, 717 (Bankr. E.D. Mo.1998).

Had Welch pleaded "poverty", such affirmative defense would have compelled the Court's consideration of his ability to pay, with the concomitant right of SEPH to inquire into his financial circumstances. That didn't happen. Welch's Response to SEPH's Motion for Disgorgement did not raise the issue of his ability to pay any sanction the Court might impose. [Doc. "Filed Under Seal " on December 4, 2017, unsealed and filed of record as attachment to Doc. 570 on March 27, 2018]. Thus, it was appropriate for the Court to not require specific evidence as to Welch's net worth, but to exercise its significant discretion in determining the amount of sanctions, if any, which should be imposed for the non-disclosure violations, subject to the principle that the sanction should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons. The panoply of sanctions the Court could impose could range from "a warm friendly discussion on the record, a hard-nose reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances." *Thomas v. Capital Security Services, Inc*., 836 F.2d 866, 876-77 (5th Cir. 1988). This Court reprimanded and chastised Welch in the strongest language in open court, in *in camera* proceedings, and publicly in its published Disgorgement Order [*In re Stewart*, 583 B.R. 775 (Bankr. W.D. Okla. 2018)]. It imposed the $25,000 sanction on Welch and his firm after giving proper consideration to the

6

numerous factors under *In re Howard Avenue Station, LLC,* 568 B.R. 146, 153-154 (Bankr. M.D. Fla. 2017) and, in the Tenth Circuit, under *White*. [See Disgorgement Order, Doc. 576, pgs. 12-13]. The weight accorded each of those factors, including the financial resources of the responsible person, is a matter of judicial discretion to be exercised in light of the particular circumstances. See e.g. *In re Diamond Mortgage Corp. of Illinois,* 135 B.R. 78, 97 (Bankr. N.D. Ill.1990) (In assessing a request for sanctions what counts is "that the bankruptcy judge be given an immediate opportunity to make an intelligent appraisal of the situation and to apply his experience, common sense, and knowledge of the particular proceeding to the request."). The Court's thirty years in the private practice of bankruptcy law, including more than twenty-two years as a Chapter 7 trustee, provided the background and experience to exercise her discretion in determining the degree of sanctions which was appropriate under the circumstances. That experience, the appropriate factors and yes, common sense, dictates that a mere reprimand would be too little, and that a $350,000 sanction would be clearly excessive. Accordingly,

**IT IS ORDERED** that *SE Property Holdings, LLC's Motion to Alter or Amend Order on Disgorgement, Pursuant to Bankruptcy Rule 9023* [Doc. 581] be and the same is hereby **Denied** insofar as it seeks the reconsideration, vacation or amendment of the $25,000 sanction imposed upon Welch and Welch P.C.; and

**IT IS FURTHER ORDERED** that the Motion [Doc. 581] is **Granted** insofar as it seeks clarification of the Disgorgement Order [Doc. 576] that the same did *not* decide the "property of the estate issue" as set forth under Numerical Paragraph 1 above.

**# # #**