**Dated: March 25, 2021**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | |
| David A. Stewart, ) | Case No. 15-12215-JDL |
| Terry P. Stewart ) | Ch. 7 |
| ) | Jointly Administered |
| Debtors. ) | |

## MEMORANDUM OPINION AND ORDER ON
## MOTIONS TO COMPEL DISCOVERY

On March 24, 2021, this discovery dispute came before the Court for hearing on (1) *SE Property Holdings, LLC's* ("SEPH") *Motion to Compel Welch Parties* (collectively and individually hereinafter referred to as "Welch") *To More Fully Respond to Interrogatories, and Produce Documents* [Doc. 795], the *Response and Objection of Welch Law Firm, P.C. and Ruston C. Welch to SE Property Holdings, LLC's Motion to Compel* [Doc. 807] and *SE Holdings, LLC's Reply Brief to Response of Welch Parties on Motion to Compel* [Doc. 818]; (2) *SE Property Holdings, LLC's Motion to Compel Neverve, LLC* ("Neverve") *to Produce Documents* [Doc. 796] and the *Corrected Response and Objection of Neverve, LLC to SE Property Holdings, LLC's Motion to Compel* [Doc. 815]; and (3) *SE Property Holdings LLC's Motion to Compel*

*Shimmering Sands Development Company, LLC to Produce Documents* ("Shimmering Sands") [Doc. 797].

## Background

For more than two years after being retained by the Debtors in the spring of 2015 to represent them in this bankruptcy case, numerous adversary proceedings associated with it, as well as representing numerous affiliates owned or operated by Debtors, Welch failed to disclose the amount, source or the payment of any attorney fees to him.  It was not until August 30, 2017, when the Court ordered him to do so that the Welch revealed that he had been paid fees and expenses for the bankruptcy case and adversaries in the amount of $348,044.41.  The source of all of these payments was proceeds of tort claims against British Petroleum arising out of the April 2010 Deepwater Horizon oil spill in the Gulf of Mexico received by Debtors' affiliates, principally for the matter presently before the Court, Neverve and Shimmering Sands. The Neverve and Shimmering Sands proceeds (but not in their entirety) were applied to the then outstanding hourly rate fees and expenses incurred by Welch in his representation of the Debtors, affiliates, insiders or related defendants in various adversary proceedings.

As a result of Welch's failure to have made proper disclosure of his attorneys' fees as required by 11 U.S.C. Code § 329 and Fed.R.Bankr.P. 2016 and 2017,[1] SEPH moved the Court to order disgorgement of all of the approximately $350,000 in fees received by Welch for his bankruptcy services.  On April 27, 2018, this Court held that the appropriate sanction for Welch's failure to timely disclose his compensation was the disgorgement of $25,000. *In re Stewart,* 583 B.R. 775 (Bankr. W.D. Okla. 2018).  SEPH appealed, and the BAP affirmed the $25,000 sanction. *SE Property Holdings, LLC v. Stewart (In re Stewart),* 600 B.R. 425 (10th Cir.

---

[1] All further references to "Code", "Section", and "§" are to the United States Bankruptcy Code, Title 11 U.S.C. § 101 *et seq*., unless otherwise indicated.  All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

BAP 2019). On SEPH's appeal, the Tenth Circuit reversed and remanded this Court's decision. *In re Stewart,* 970 F.3d 1255 (10th Cir. 2020). The Circuit Court held that the presumptive or "default" position for failure of an attorney to make proper disclosure under § 329 and Rule 2016 was disgorgement of the entire fees paid to the attorney unless there were "sound reasons supported by solid evidence" in mitigation of total disgorgement. *Id.*, 970 F.3d at 1268. The Court of Appeals found that the Bankruptcy Court had not heard such "solid evidence" to support any mitigation of anything less than the entire fee. "Most importantly, however, the bankruptcy court failed to examine the source of the payments to Mr. Welch.**** (and) [w]e would therefore expect the court to examine those payments before deciding not to require complete disgorgement." *Id.*

In accordance with the instructions from the Court of Appeals, this Court entered a Scheduling Order in conjunction with an evidentiary hearing solely on the issue of disgorgement of fees from Welch to be held on June 1, 2021. [Doc. 772]. Pursuant to that Scheduling Order, SEPH served Welch *Interrogatories and Requests for Production of Documents* relative to the disgorgement issue. SEPH also served upon Shimmering Sands and Neverve *Subpoenas to Produce Documents*. While Welch answered many of the Interrogatories and produced many documents responsive to the Requests, he did object to certain Interrogatories and Requests for Production, primarily on the basis of the attorney-client privilege and the prohibition of the Confidentiality Order entered by the United States District Court in Louisiana in the BP oil spill litigation. Shimmering Sands and Neverve objected to the Subpoenas for documents on the basis of attorney-client privilege and included a Privilege Log in their objections.

Not satisfied with the discovery responses from Welch, Shimmering Sands and Neverve, SEPH filed its Motions to Compel. Welch has filed his Response to the Motion to Compel. Neverve, although originally objecting to the Subpoena to Produce Documents on the sole, general basis of "privileged attorney/client communication" [Doc. 796-1], in its Response to the

3

Motion to Compel adopted the more expansive Response of Welch, particularly relevant being the protection of the Confidentiality Order.  Shimmering Sands has not filed a response to SEPH's Motion to Compel.

## Discussion

### A. The Confidentiality Order

Included in Welch's and Neverve's Response, and asserted for years throughout much of this litigation, is the argument that certain documents should not be produced by virtue of the Confidentiality Order issued by the United States Magistrate in the U.S. District Court for the Eastern District of Louisiana in the BP oil spill multi-district litigation.  [*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*,  MDL No. 2179, Section J (E.D. La. 1/13/16)].  That Order reads as follows:

> [Concerning Settlement Documents and Discussions]
>
> Pursuant to the Court's inherent jurisdiction and Federal Rule of Evidence 408, every recipient of this Order shall treat as strictly confidential all documentation, draft or otherwise, all term sheets, release documents, or other settlement-related documentation, and all communications regarding resolution of claims or lawsuits related to this multi-district litigation (including both the fact and substance of any discussions and any document prepared in connection therewith). Any person who has been shown any such documents and/or including in communications shall be bound to keep such information as private and disclosed to no one unless specifically permitted in advance by the undersigned. Documents related to settlement shall be deemed exempt under the Freedom of Information Act, 5 U.S.C. sec. 522, and any corresponding state open records act absent good cause shown in this proceeding.
> Any person found to be in violation of this order will be subject to imposition of sanctions.

Both the Neverve [780-3, Exhibit A] and Shimmering Sands' Subpoenas [780-4, Exhibit A] seek the following:

> 1. "Any agreements and/or contracts related to the BP Claims of Neverve (Shimmering Sands') in the possession of Neverve,

including agreements related to the proceeds of such claim and attorneys' fees to be paid on such claim.

2. Any documents related to the alleged contingency fee paid to Welch Law Firm, P.C. and/or Ruston C. Welch for services allegedly provided by Welch Law Firm, P.C. and/or Ruston C. Welch to Neverve (Shimmering Sands) related to Neverve's (Shimmering Sands') BP claim.

3. Any communications between Neverve (Shimmering Sands) (including any representative, officer, manager, or member of Neverve (Shimmering Sands)), and any attorney, firm or other person/entity representing Neverve (Shimmering Sands) regarding its BP claim, whether via electronic mail, text message, or other means, related to:

   a. BP claim of Neverve (Shimmering Sands); fee arrangements related to that BP claim; and settlement of that BP claim;
   b. Receipt of proceeds from the settlement of the BP claim of Neverve (Shimmering Sands), and any transfers of those proceeds;
   c. Use of BP settlement proceeds to pay attorneys' fees of Welch Law Firm, P.C. and/or Ruston C. Welch;
   d. Service and/or assistance provided by Welch Law Firm, P.C. and/or Ruston C. Welch related to the BP claim of Neverve (Shimmering Sands).

As to Welch, there are 48 Requests for Production, 21 of which assert the Confidentiality Order as a basis for refusing to produce documents: 12, 14, 15, 16, 17, 18, 19, 20, 26, 27, 28, 29, 31, 32, 34, 36, 38, 40, 41, 42 and 43. Each of those Requests seek documents "between Neverve (and Shimmering Sands) and all communications related to said representation agreements", "all fee sharing agreements entered into or consented by Neverve regarding its BP claim and settlement thereof," and/or "all time sheets, billing statements, and invoices related to or arising out of the Welch Parties representation of Neverve, and all communications

5

related thereto from April 1, 2015 through the present," and "documents in the possession (of Welch) for the legal services regarding Neverve's BP claim and settlement thereof."

The Confidentiality Order does not specifically mention non-disclosure of attorneys' fees. While one could broadly read "all communications regarding resolution of the claims or lawsuits" to encompass attorney fee agreements and payments, in this case there is a litany of reasons why the Court does not believe that such an interpretation is appropriate in the present circumstances. First, we begin with the premise that "federal courts have held that the scope of discovery should be broadly and liberally construed to achieve full disclosure of all potentially relevant information." *Sanchez v. Matta,* 229 F.R.D. 649, 654 (D. N.M. 2004); *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1520 (10th Cir. 1995). Fed.R.Civ.P. Rule 26 "contemplates discovery of any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." *Anaya v. CBS Broadcasting, Inc.,* 251 F.R.D. 645, 649-50 (D. N.M. 2007). Second, It is well-recognized in every circuit, including our own, that the identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege. *In re Grand Jury Subpoenas,* 906 F.2d 1485, 1492 (10th Cir. 1990); *United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974); *In re Grand Jury Subpoena*, 926 F.2d 1423, 1431 (5th Cir. 1991) ("As a general rule, client identity and fee arrangements are not protected as privileged"). Third, Welch and Neverve bear the burden of proof on the assertion of any privilege or protection from disclosure, and any "[a]mbiguites as to whether the elements of a privilege claim have been met are construed against the proponent." *Taylor Lohmeyer Law Firm v. United States*, 957 F.3d 505, 510 (5th Cir. 2020) (quoting *Equal Employment Opportunity Commission v. BDO USA, L.L.P.* 876 F.3d 690, 695 (5th Cir. 2017)). Fourth, given the fact that (1) the BP oil spill occurred in 2010, (2) Welch didn't even begin representing the Debtors until the spring of 2015 and didn't sign his "fee splitting agreement" providing for his fees until April 2016 and (3) the Neverve and Shimmering

6

Sands claims were resolved and fees paid to Welch by August 2016, it is highly unlikely that Welch participated in much, if any, of the substantive settlement of those claims. His involvement was, although the documents need be seen, likely limited to his efforts to make sure that he was paid for his bankruptcy work out of the BP settlement proceeds. Fifth, confidentiality orders or agreements in mass-tort cases are generally entered to prevent public dissemination of the amount of settlement of claims to prevent the holders of claims from learning what other similar claimants have been paid. In the present case, the gross amount of the settlements paid for Neverve, Shimmering Sands and other Stewart affiliates have previously been disclosed to third-parties (e.g. Kirkpatrick Bank), in Bankruptcy Court filings and/or are easily calculable from the net fees and contingency fee-splitting agreements between Welch and Taylor Martino.[2] Sixth, the Tenth Circuit and its order remanding the disgorgement matter back to this Court made it unequivocally clear that this Court was to take evidence on every aspect of agreements for and the payment of Welch's attorneys' fees from the BP settlement proceeds, including agreements, sources, motives and value. This Court's obligation is to insure Welch's complete transparency and candor. That obligation would not be met by allowing more secrecy via, at best, an attenuated claim of confidentiality.

The Supreme Court "has approved the practice of requiring parties who seek to avoid disclosure of documents to make documents available for *in camera* inspection." *United States v. Zolin,* 491 U.S. 554, 569, 109 S.Ct. 2619 (1989). "In camera review is an appropriate method

---

[2]In that regard, Welch has previously disclosed much information or documents regarding his attorney fees connected with the BP claims and possibly subject to the Confidentiality Order: (1) the Fee Sharing Arrangement for Employment Contracts with David Stewart Related Entities between Welch and Taylor Martino P.C. for a contingency fee for the BP claims of Shimmering Sands and Neverve [Doc. 522-7]; (2) a narrative statement regarding the settlement of the BP claims under the paragraphs titled "Contingency Fee Sharing Non-debtor Opt Out BP Claims" in the *Supplemental Statement to Amended Disclosure of Compensation of Attorney for Debtors* [Doc 522]; and (3) time records also part of the *Supplemental Statement to Amended Disclosure* [Doc. 522-5].

of determining whether documents are privileged". *Williams v. Broaddus,* 331 Fed.Appx. 560, 562 (10th Cir. 2009); *FDIC v. United Pacific Ins. Co.*, 152 F.3d 1266, 1276 n.6 (10th Cir. 1998) ("In determining whether the relevant ... records contain privileged communications, the district court may adopt procedures, such as *in camera* review of allegedly privileged documents, to protect against disclosure of privileged communications."). "The court must have some basis or grounds for conducting an in camera review." *Mounger v. The Goodyear Tire & Rubber Co.*, 2000 WL 33712198 (D. Kan. 2000). The decision to review documents *in camera* is within the discretion of the trial court. *In re Grand Jury Subpoenas,* 906 F.2d 1485, 1493 (10th Cir. 1990); *In re Grand Jury Proceedings,* 723 F.2d 1461, 1467 (10th Cir. 1983), *cert. denied*, 469 U.S. 819, 105 S.Ct. 90 (1984); *In re Slaughter,* 694 F.2d at 1258, 1260 n. 2 (11th Cir. 1982) (referring to *in camera* review of possibly privileged documents in context of request for information relating to attorneys' fees). For the reasons stated above, it is imperative that the Court see all of the requested documents.

**B. Attorney-Client Privilege**

In addition to the Confidentiality Order, Welch and Neverve also seek to avoid disclosure of documents under the claim of attorney-client privilege. Under both federal common law and Oklahoma law, the attorney-client privilege provides that the client has a right to refuse disclosure and to prevent any other person from disclosing confidential information with his attorney made for the purpose of facilitating the rendition of professional legal services to the client. See *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010); Title 12 O.S.§ 2502(B)(1) and (5). The privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677 (1981).

The burden of establishing the elements of the attorney-client privilege is on the party seeking to assert the privilege. *In re Grand Jury Subpoena,* 697 F.2d 277, 279 (10th Cir. 1983).

To meet this burden of proof, a party asserting the attorney-client privilege under federal common law must establish that;

> 1. The asserted holder of the privilege is or sought to become a client;
>
> 2. The person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with his communication is acting as a lawyer;
>
> 3. The communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of a stranger (c) for the purpose of securing primarily either (i) an opinion on law (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and
>
> 4. The privilege has been (a) claimed and (b) not waived by the client.

*Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 601-602 (8th Cir. 1977).

The principles/reasons stated by the Court above with regard to why the Confidentiality Order should not prevent the disclosure of documents held by Welch, Neverve or Shimmering Sands apply equally to Welch's and Neverve's assertion of the attorney-client privilege. The Court need not repeat all of those principles here. All the documents sought by SEPH should be delivered to the court for *in camera* review.

### C. The Crime/Fraud Exception

"[T]he purpose of the crime/fraud exception to the attorney-client privilege is to assure that the seal of secrecy between the lawyer and client does not extend to communications made for the purpose of getting advice for the commission of fraud or crime." *In re M & L Business Machine Co., Inc.* 167 B.R. 937, 941 (D. Colo. 1994) (citing *United States v. Zolin,* 491 U.S. 554, 563, 109 S.Ct. 2619, 2626 (1989)). As stated by Justice Cardozo in 1933, "[t]he [attorney-client] privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law." *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465 (1933); *Zolin,* 491 U.S. at 563 (the privilege "does not

extend to communications made for the purpose of getting advice for the commission of a fraud or crime"); *United States v. Ballard*, 779 F.2d 287, 292 (5th Cir. 1986) ("The privilege for communications between client and attorney ceases when the purpose of the privilege is abused, when the lawyer becomes either the accomplice or the unwitting tool in a continuing or planned wrongful act."). While the party invoking the privilege bears the burden of proving that his or her communication is privileged and therefore protected from disclosure, a party asserting an exception to a privilege bears the burden of demonstrating its applicability. *Clark,* at p. 15.

To avail itself of the crime-fraud exception to the attorney-client privilege, a party must make a *prima facie* showing: (1) that the client was engaged in, or planning, criminal or fraudulent conduct when it sought legal advice from the attorney, and (2) that the attorney's assistance was obtained in furtherance of the criminal or fraudulent conduct. *In re Fundamental Long Term Care, Inc.,* 509 B.R. 956, 963 (Bankr. M.D. Fla. 2014). Generally, the party claiming that the exception applies must establish prima facie evidence the attorney's alleged participation in the crime or fraud has "some foundation in fact." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995)(citing *In re Vargas,* 723 F.2d 1461, 1467 (10th Cir. 1983)). "Once the party seeking disclosure makes a prima facie case that the attorney-client relationship was used to promote any intended criminal activity, the confidences within the relationship are no longer shielded." *Ballard,* 779 F.2d at 292. Courts are afforded sound discretion in determining whether the party advancing the exception has established prima facie evidence. *Motley,* 71 F.3d at 1551.

Often, an *in camera* review will be necessary to determine the applicability of the crime-fraud exception. The standard for the burden placed on the opponent of the privilege was stated in *Zolin,* 491 U.S. at 572, 109 S.Ct. at 2630-31:

> In fashioning a standard for determining when *in camera* review is appropriate, we begin with the observation that "*in camera* inspection…is a smaller intrusion upon the confidentiality of the

10

> attorney-client relationship than is public disclosure." (Citation omitted). We therefore conclude that a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege. The threshold we set, in other words, need not be a stringent one.
>
> We think that the following standard strikes the correct balance. Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person." *Caldwell v. District Court,* 644 P.2d 26, 33 (Colo. 1982), that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.

See also, *In re Settler's Housing Service, Inc.*, 558 B.R. 285 (Bankr. N.D. Ill. 2016). ( To warrant an *in camera* inspection of materials that allegedly fall within the scope of the crime-fraud exception to the attorney-client privilege, there need only be a showing of a factual basis adequate to support a good faith belief that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.).

To begin with, SEPH does not appear to be accusing Welch, the Debtors, Neverve or Shimmering Sands of committing an actual crime. It has, however, made claims that the Debtors and Welch engaged in making fraudulent transfers. Such actions are pending against the Debtors in this Court and against Welch in the Federal District Court. The crime-fraud exception has been applied in the fraudulent transfer context. *Cendant Corp. v. Shelton*, 246 F.R.D. 401, 405 (D. Conn. 2007); *Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416, 427 (S.D. N.Y. 2006). It is also clear that the term "fraud" is to be interpreted broadly and not limited to conventional notions of tortious frauds. In *Husky International Electronics Inc. v. Ritz,* ___U.S.___, 136 S.Ct. 1581 (2016), the Supreme Court held that the term "actual fraud", as use in the discharge exception for debts obtained by false pretenses, a false representation, or actual fraud, encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation.

11

> Although "fraud" connotes deception or trickery generally, that term is difficult to define more precisely. See 1 J. Story, Commentaries on Equity Jurisprudence § 189, p. 221 (6th ed. 1853)(Story)("Fraud...being so various in its nature, and so extensive in its application to human concerns, it would be difficult to enumerate all the instances in which Courts of Equity will grant relief under this head"). There is no need to adopt a definition for all times and circumstances here because, from the beginning of English bankruptcy practice, courts and legislatures have used the term "fraud" to describe a debtor's transfer of assets that, like Ritz's scheme, impairs a creditor's ability to collect the debt.

*Id.*, at 1586-87.

Deception and deceit in any form universally connote fraud. "Public policy demands that the "fraud" exception to the attorney-client privilege as used in [Rule 504] be given the broadest interpretation." *Gates Corporation v. CRP Industries, Inc.* 2018 WL 4697327 (D. Colo. 2018) (quoting *Fellerman v. Bradley*, 493 A.2d 1239, 1245 (N. J. 1985)). The "fraud" exception has been interpreted broadly to include, for example, "confederating with clients to allow court and [opposing] counsel to labor under a misapprehension as to the true state of affairs." *Fellerman,* at p. 1245.

It is not disputed that Welch failed to disclose the payment of his bankruptcy attorneys' fees from the BP settlements for two years and did so only after ordered by the Court. The Tenth Circuit, in remanding the case to this Court, posited that Welch may have had a nefarious motive for not disclosing his bankruptcy compensation by conduct which it (and this Court) described as "egregious" and "incredulous", 970 F.3d at 1262 and 1268, which this Court should fully investigate by an evidentiary hearing. At this stage of the proceedings, this Court is not inferring that Welch, Shimmering Sands or Neverve have committed fraud. Those issues are to be resolved in the future in this and other courts. The issue before this Court is whether there are facts in mitigation of Welch's disgorgement of his entire bankruptcy attorneys' fees. The Court does find that based upon the evidence adduced throughout the six years of this litigation, particularly with regard to the non-disclosure of Welch's attorneys' fees, Debtor David Stewart's

testimony that he had paid Welch's fees, and Welch's conduct as stated in the Tenth Circuit's Opinion, that there is prima facie evidence to support a good faith belief for SEPH's claim that the crime/fraud exception applies to Welch's claim of attorney-client privilege.

**IT IS THEREFOR ORDERED** that *SE Property Holdings, LLC's Motion to Compel Welch Parties to More Fully Respond to Interrogatories and Produce Documents* [Doc. 795] is **HEREBY GRANTED,** and that Ruston C. Welch and the Welch Law Firm are **HEREBY ORDERED** to submit to the Court for in camera review no later than March 29, 2021, at 5:00 P.M., all documents sought by SE Property Holdings, LLC, in its *Requests for Production of Documents* [Doc. 795-1] not previously provided to SEPH, including but not limited to, any documents included in any Privilege Log heretofore provided to SE Property Holdings, LLC. The Privilege Log should also be provided to the Court.

**IT IS FURTHER ORDERED** that *SE Property Holdings, LLC's Motion to Compel Neverve, LLC to Produce Documents* [Doc. 796] is **HEREBY GRANTED,** and that Neverve, LLC, is hereby directed to deliver to the Court for in camera review no later than March 29, 2021, at 5:00 P.M., all documents sought by SE Property Holdings, LLC in its *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case* [Doc. 780-3] not previously provided to SEPH including, but not limited to, documents listed in Neverve's Privilege Log [Doc. 796-1].

**IT IS FURTHER ORDERED** that *SE Property Holdings, LLC's Motion to Compel Shimmering Sands, LLC to Produce Documents* [Doc. 797] is **HEREBY GRANTED,** and that Shimmering Sands, LLC, is hereby directed to deliver to the Court for in camera review no later than March 29, 2021, at 5:00 P.M., all documents sought by SE Property Holdings, LLC in its *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case* [Doc. 780-4] not previously provided to SEPH, including, but not limited to, documents listed in Shimmering Sands, LLC's Privilege Log [Doc. 797-1].

# # #